ROSCOE WALSWORTH *vs.* ANDREW A. CASASSA & others.

Suffolk.    October 22, 1914. — November 9, 1914.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DE COURCY, JJ.

*Municipal Corporations,* By-laws and ordinances, Town meetings.    *Words,* "Consecutive."

A by-law of a town, which provides that "No by-law in this code shall be repealed or amended, and no by-law shall be added thereto, unless such repeal, amendment or addition shall be adopted by two consecutive legally called town meetings, the date of the last meeting to be not less than two months from the date of the first meeting," requires that the second meeting that acts on the repeal or amendment of a by-law should be the next meeting that is held after the expiration of two months from the first meeting, although other meetings may have been held during the two months' interval for the transaction of other town business.

A by-law of a town, which provides that no by-law of the town shall be repealed or amended unless the repeal or amendment is adopted by two legally called town meetings, the second of which shall be held not less than two months after the first and shall be the next meeting held after the expiration of such two months, is reasonable and valid.

Under St. 1907, c. 560, § 358, (now St. 1913, c. 835, § 396,) which provides that, if the selectmen of a town unreasonably refuse to call a town meeting, a justice of the peace, upon the application of ten or more voters of the town, may call such a meeting, if for a considerable time there have been criticism and unrest in a town regarding the conduct of the board of assessors and the tax collector, and one assessor has been convicted of a crime based on a falsification of the public records, and thereupon about seventy voters of the town by a petition in writing ask the selectmen to call a town meeting in not less than twelve days to consider the repeal of a by-law of the town providing for the election of the town solicitor by the committee on claims, of which the chairman of the board of assessors is *ex officio* a member, a vote of the selectmen to call a town meeting on a day about ten weeks ahead is equivalent to a refusal to call such a meeting within a reasonable time and justifies a calling of a town meeting by a justice of the peace under the statute.

Where a by-law of a town provided that no by-law of that town should be repealed unless the repeal was adopted by two legally called town meetings, the second of which should be held not less than two months after the first and should be the next meeting held after the expiration of the two months, and, where, after

a vote to repeal a by-law had been passed at a legally called meeting of the town and, before such vote to repeal the by-law was passed at a second town meeting, three other town meetings were held, two of them within two months from the date of the first meeting at which the vote to repeal the by-law was passed and the third after the expiration of such two months, and in the warrant calling such third meeting an article permitting a vote on the repealing of the by-law was omitted intentionally through the misconduct of the selectmen, it was *held*, that the two town meetings within the two months after the first meeting at which the repeal was voted on did not affect the validity of the repeal, but that the holding of the third meeting after the expiration of such two months rendered the attempted repeal invalid, because the second meeting at which the vote to repeal the by-law was passed was not the next one after the expiration of the two months; and that the misconduct of the selectmen, although unjustifiable, did not dispense with a compliance with the by-law of the town in regard to the requirements for repealing a by-law.

PETITION, filed on May 8, 1914, by Roscoe Walsworth, alleging himself to be the town solicitor of the town of Revere, for a writ of mandamus addressed to Andrew A. Casassa and to the selectmen, the auditors and the members of the committee on claims of that town, alleging that Mr. Casassa claimed to have been elected town solicitor under Article III of the by-laws of the town and that this article had been repealed, and praying that Mr. Casassa might be commanded to refrain from attempting to perform the duties of town solicitor and deliver to the petitioner the key to the town solicitor's office and all papers, records, books and documents in his possession or control belonging to the law department of the town.

Frank Paul, Esquire, was appointed as auditor to hear the parties and their evidence, to find the facts and to report them to the court.

The case came on to be heard upon the petition, the answer, and the auditor's reports (including a supplemental report) before *Braley, J.*, who found the facts to be as stated by the auditor, and, at the request of the respondents, reported the case for determination by the full court. If as matter of law the petitioner was entitled to relief, the writ of mandamus was to issue; otherwise, the petition was to be dismissed.

The material facts as found by the auditor and the single justice are stated in the opinion.

Article III of the by-laws of the town of Revere was as follows:

"Article III.   Committee on Claims.

"Section 1.   The Chairman of the Selectmen, Chairman School Committee, Chairman Board of Assessors, Chairman Board of Health, Chairman Sewer Commissioners, Chairman Park Commissioners and Auditors shall constitute a Committee to be known as 'The Committee on Claims,' and shall serve without compensation.

"Section 2.   The Committee on Claims shall hereafter on or before the first day of May, and whenever any vacancy shall exist, choose some member of the Suffolk bar, a resident of the Town, if possible, to act as Town Solicitor, who shall be paid such salary as said Committee may direct.

"Section 3.   The Chairman of the Selectmen shall call a convention of said officers for the purpose aforesaid, and shall give notice thereof in writing to the several officers entitled to vote therein, seven (7) days at least before said meeting.

"Section 4.   Said Committee shall have authority to prosecute, defend and compromise all litigation to which the Town is a party, and to employ special counsel to assist the Town Solicitor whenever in their judgment necessity therefor arises, and shall have custody of the law library of the Town.

"Section 5.   The term of office of said Solicitor shall begin on the first day of May of each year, and shall continue until the election and acceptance of his successor.

"Section 6.   The Town Solicitor shall draft all bonds, deeds, leases, obligations, conveyances and other legal instruments, and do every professional act which may be required of him, by vote of the Town or any Board of Town officers.   Also when required by said Boards or any committee of the Town, he shall furnish a written opinion on any legal question that may be submitted to him, and he shall at all times furnish legal advice to any officer of the Town who may require his opinion upon any subject concerning the duties incumbent upon such officer by virtue of his office.

"He shall prosecute all suits ordered to be brought by the Town, and shall appear at any Court in the Commonwealth in defense of all actions or suits brought against the Town or its officers in their official capacity.   Also, shall try and argue any and all causes in which the Town shall be a party, before any tribunal, whether in law or in equity, in the Commonwealth, or before any

Board of Referees or Commission, and shall appear at any and all hearings in behalf of the Town whenever his services may be required."

Article XXI was entitled "Repeal, Amendments, etc.," and is quoted in full in the opinion.

The case was submitted on briefs.

*S. R. Cutler & H. W. James,* for the respondents.

*R. Walsworth, pro se.*

RUGG, C. J. The question at issue is whether the petitioner is the town solicitor of the town of Revere. Its answer depends on the determination of an inquiry whether Article III of the by-laws of that town has been repealed. This in turn rests upon the decision whether in attempting such repeal there has been compliance with the requirements of Article XXI of the by-laws. That article is of this tenor: "No by-law in this code shall be repealed or amended, and no by-law shall be added thereto, unless such repeal, amendment or addition shall be adopted by two consecutive legally called Town Meetings, the date of the last meeting to be not less than two (2) months from the date of the first meeting." The meaning of the final words, to the effect that there must be an interval of two months between the two meetings, is not open to doubt. Its purpose plainly was to prevent the repeal of any part of the by-laws by a gust of public opinion and to require that there be a period for deliberate consideration of the subject, so that the abrogation would rest upon the opportunity for mature thought. Its aim is to accomplish as near as may be a repeal based upon careful reflection rather than upon hasty impulse. The rest of the by-law must be interpreted in the light of this provision. The natural import of the words "two consecutive legally called Town Meetings," standing alone, would be that there must be two meetings, the one following the other immediately and without any intervening meeting. A provision that the repealing vote must be passed at two meetings necessarily implies that one meeting must follow the other. The word "consecutive" would be superfluous if given no greater force than merely that one meeting must come after the other. It is a canon of interpretation that effect must be attributed to each word of a by-law or ordinance. The only purpose of introducing the word "consecutive" into this by-law is to require a

continuity of municipal action, founded upon a sufficiently sustained public sentiment to endure from one meeting to the next. It has a rational purpose in that it would tend to prevent disjointed action at meetings separated by a long period of time, wherein the thought of the people might become forgetful of the subject, and also to frustrate a scheme for the selection of meetings, at the option of those favoring or opposing the repeal, likely to be small in attendance or for any other reason not expressive of the general sentiment of the voters. But the word "consecutive" must be construed in connection with the other provision that at least two months must intervene between the two meetings. It hardly could have been intended that under no circumstances should any town meeting be held in the interval without making necessary the starting anew of the machinery for a repeal. In order that the whole paragraph be consistent, "consecutive" must mean the next meeting held after the expiration of two months from the first. Such two meetings would be consecutive in the sense of the one following the other at the shortest interval permitted by the by-law. It would not hinder the holding of meetings within that interval for the transaction of other town business.

As thus construed, the by-law is reasonable and must be followed. Town by-laws, within their appropriate sphere, are binding upon the town and its citizens. Before becoming effective, it is required that they be approved by some outside authority, formerly a judge of the Superior Court, now the Attorney General. It is well within the scope of the law-making power of the town to provide that they shall not be repealed except after the sufficient delay to insure the establishment of a settled conviction by the voters to that end which is manifested in this by-law.

It remains to examine the facts in the light of the by-law as thus interpreted.

On July 2, 1913, a petition was presented to the selectmen, signed by some seventy voters, asking that a town meeting be called not later than July 14, to take action concerning certain articles therein set forth, one of which was, to see whether the town would repeal Article III of the by-laws. In a preamble to this petition, reference was made to confusion in the assessing and collecting departments of the town as an emergency which re-

quired prompt action. The selectmen voted to call a town meeting on September 8. Thereupon, a justice of the peace, on July 3, called a town meeting for July 21. He was authorized to do this by St. 1907, c. 560, § 358, (now St. 1913, c. 835, § 396,) provided the selectmen unreasonably had refused to call a town meeting. The auditor finds that there had been for a considerable time criticism and unrest in the town touching the performance of their duties by the board of assessors and tax collector, culminating in the latter part of June in the conviction of one assessor for a crime based on falsification of the public records. This deplorable state of affairs appears to have been regarded as having some connection with the method of town administration prescribed by Article III of the by-laws. A decadent civic spirit and a degenerate municipal consciousness alone would have remained passive under such circumstances. In any town of Massachusetts the natural channel for the expression of public feeling and for the affirmative action of a self respecting community competent to govern itself, in the face of these conditions, is the town meeting. A delay by selectmen to call such a meeting for almost ten weeks, although requested in writing to do so forthwith by more than three score voters, was the equivalent of a refusal to call it within a reasonable time. It abundantly warranted a justice of the peace in exercising the power vested in him by the statute to call a town meeting. At the meeting thus called, the first vote was passed to repeal Article III of the by-laws. Thus far the action of the town was correct in form.

At this meeting about a thousand voters were present, an unusually large attendance. In connection with the vote to repeal, a further vote was passed, requesting the selectmen to call another meeting not earlier than September 22 next, the warrant therefor to contain an article for the repeal of Article III of the by-laws, in order that sixty days might elapse between the meeting then being held and the next, as required by Article XXI of the by-laws. A town meeting was held on August 25 for the sole purpose of electing an assessor of taxes to fill a vacancy. On August 20 a special committee, appointed at the meeting of July 21, requested the selectmen to postpone calling the town meeting which they had voted to call for September 8 until a date not

earlier than September 22. But the selectmen issued the warrant for a meeting on September 8, omitting any article respecting the repeal of Article III of the by-laws. On September 10 another petition, signed by more than ten voters, was presented to the selectmen, requesting that there be inserted in the warrant for the next town meeting, among other articles, one relating to the repeal of Article III of the by-laws. The board of selectmen voted not to insert this article and called a meeting for October 27 for the consideration of other matters, omitting such an article from the warrant. The next meeting thereafter was held on March 9, 1914, in the warrant for which was an article as to the repeal of Article III of the by-laws. At an adjournment of this meeting a vote was passed to repeal that article. Thus it appears that between the meeting of July 21, 1913, when the first vote to repeal Article III was passed, and that of March 9, 1914, when the second vote to that end was passed, three other town meetings had been held, two of which were within two months from July 21 and one after the termination of that period. Does this comply with Article XXI of the by-laws? The two held before the expiration of two months from the date of the passage of the first repealing vote have no effect. The subject of repeal could not legally have been brought before these meetings under the terms of Article XXI. But that is not true of the meeting held on October 27. That was the next legally called meeting held after the expiration of two months from the meeting of July 21, and hence was "consecutive" to it in the sense in which that word is used in the by-law. It was the next meeting at which the subject legally could have been considered. It was the meeting at which alone the second repealing vote could have been passed.

It is strongly urged that an article permitting such action to be taken was omitted from the warrant for that meeting through the misconduct of the selectmen. That contention is sound. No excuse for them in this respect appears upon the record. The only pretext put forward was that they "considered" themselves "insulted" by action taken upon other matters at the September meeting. Even if they had been insulted, that was no ground for refusing to insert in the warrant for a town meeting an article requested by a vote of the unusually large town meeting held in July and also by a numerously signed petition of the voters. This

is not an instance of selectmen declining to call a special meeting for the consideration of a matter which could as well wait until a time when several subjects could be combined in one meeting, or refusing to act upon the insistence of a small and factious minority of the voters.  On the contrary, important interests of the town were at stake, touching which a large number of voters seemingly were stirred deeply with sufficient reason, and the selectmen arbitrarily, without justification, refused to do their plain duty in respect to allowing the voters an opportunity to act upon the matter at the town meeting.

But all this is not ground for ignoring or nullifying the by-law. It would be a government of men and not of laws, if settled rules for conduct can be trampled upon simply because it becomes difficult to obey them, or because others refuse to do their duty. Laws must be observed scrupulously at all times, and especially by majorities, if orderly administration of affairs is to continue. Moreover, the citizens of Revere who desired to press the further consideration of the repeal of this by-law were not remediless. They still, in September, when it was apparent that the select-men were not inclined to permit the matter to come before the voters, might have applied to a justice of the peace for the calling of a town meeting for that purpose, on the ground that the selectmen unreasonably refused to call one.

The fact remains that a town meeting was held after the expiration of two months from the passage of the first repealing vote, before the one at which the second repealing vote was passed. Thus, under the provisions of Article XXI, the continuity of town meeting action required for the repeal of the by-law was broken. It follows that the vote to repeal passed at the March town meeting was ineffective and Article III of the by-laws is still in force.

Without considering the other questions involved, the conclusion is that the petition cannot be maintained.

*Petition dismissed without costs.*